**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deutsche Bank National Trust Company, | No. CV-14-01720-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Kenneth McLeod, et al., | |
| Defendants. | |

    Deutsche Bank National Trust Company sues to foreclose a note and deed of trust on Kenneth and Carol McLeod's house.  Before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 11).  A prior state court judgment bars the relief Deutsche Bank seeks, so the Bank cannot state a claim upon which relief can be granted.  Deutsche Bank refused, in five years of further proceedings following entry of that judgment, to ask the state court to fix the supposed error, and it refuses even now to make that request in post-judgment proceedings.  This Court lacks jurisdiction to change the state court judgment by fixing the error Deutsche Bank contends underlies it.  Whichever way one comes at it, the McLeods' Motion to Dismiss must be granted.  This dismissal will leave Deutsche Bank free to seek correction in the state court, if it can justify its five-year delay, or to reacquire the note and deed of trust from the current holder.  It can then seek amendment of the state court judgment based on changed circumstances to allow foreclosure based on the new endorsement.

**I.    BACKGROUND**

In October 2006, the McLeods delivered to New Century Mortgage Corporation a $771,000 note secured by a deed of trust on their home in Chandler, Arizona (the "Property"). Plaintiff Deutsche Bank represented at oral argument that it obtained ownership of the note and deed of trust in February 2007. When the McLeods defaulted on their loan payments in June 2007, the loan servicer at the time "gave notice of default and made demand upon the McLeods for payment of the amounts due and owing on the loan." Doc. 1 at 5. In response, the McLeods filed an action in Maricopa County Superior Court on August 4, 2008.

A partial copy of the state court complaint provided to this Court at oral argument reveals that the McLeods sued a number of entities—including "Deutsche Bank National Trust Company, a California Corporation" and "Securitized Asset Backed Receivables LLC Trust 2007-NC2, a New York LLC"—on a variety of theories, from violations of the federal Truth in Lending Act and Home Ownership and Equity Protection Act to breach of contract and violations of the Arizona Consumer Fraud Act.

Deutsche Bank conceded at oral argument that Deutsche Bank National Trust Company was served with process in the McLeods' suit. Deutsche Bank does not appear to contest the McLeods' claims that "Securitized Asset Backed Receivables LLC … w[as] served August 6, 2008," Doc. 11 at 4, or that "Deutsche Bank, Trustee and its principal SABR Trust answered the suit on August 29, 2008," Doc. 11-3 at 2. Two weeks after the suit was filed, Mortgage Electronic Registration Systems, Inc., which was listed as the nominee beneficiary under the deed of trust, recorded an assignment of its beneficial interest to Deutsche Bank National Trust Company as Trustee under Pooling and Servicing Agreement dated as of February 1, 2007 Securitized Asset Backed Receivables LLC Trust 2007-NC2 Mortgage Pass-Through Certificates, Series 2007-NC2.

The state court entered a default judgment ("Default Judgment") on November 24, 2008, against Securitized Asset Backed Receivables LLC Trust 2007-NC2 ("SABR"),

which had been "properly served by personal service." Doc. 1-8 at 1. That judgment quieted title to the Property in favor of the McLeods as against SABR and provided that "SABR is permanently enjoined and prohibited from recording any documents affecting or purporting to affect title of the subject property; and, any acts or recordings now or in the future by Defendant SABR relating to the subject property shall be of no force or effect." *Id.* at 2. Both parties agreed at oral argument that the basis for the state court's entry of the Default Judgment was the McLeods' assertion that SABR did not hold the note and therefore could not foreclose on the Property. The McLeods told this Court they had not argued to the state court that there was any flaw in the lien or the security instrument, or that the debt was extinguished or void. Rather, the Default Judgment adjudicated only that SABR had no lien because it was not the holder of the note.

Because there were ten other Defendants, the state court litigation continued for an additional five-and-a-half years after entry of the Default Judgment. During that time, Deutsche Bank did not "(1) move to set aside the State Court Judgment; (2) file a Motion for Judgment on the Pleadings; (3) file a Motion for Reconsideration; (4) file a Motion for Summary Judgment; (5) file a special action; or (6) directly appeal." Doc. 11 at 7-8. In November 2013, the state court "on its own motion [amended] the caption of this matter to reflect that the named Defendant Deutsche Bank National Trust Company's true name is Deutsche Bank National Trust Company as Trustee Under Pooling and Servicing Agreement Dated as of February 1, 2007 Securitized Asset Backed Receivables LLC Trust 2007-NC2 Mortgage Pass-Through Certificates, Series 2007-NC2." Doc. 11-4 at 1. By that time, all other defendants named in the complaint had been voluntarily dismissed. Finally, in March 2014, the state court determined that, because the McLeods had received the only remedy they sought in their complaint—i.e., the Default Judgment against SABR—the action had been completed at the time that the other state court defendants ceased to be parties to the action. The state court then dismissed the remainder of the action.

1 Deutsche Bank filed the instant action in July of this year, seeking (1) "a judgment of foreclosure in its favor" on the Property, (2) a declaratory judgment that the Default Judgment is invalid, does not affect Deutsche Bank's lien interest in the Property, did not extinguish the deed of trust, and "did not result in … free and clear title to the McLeods without payment of the debt," and (3) an order that the McLeods pay the outstanding balance of their mortgage to Deutsche Bank, along with interest, fees and costs. Doc. 1 at 9-11. By this Complaint, Deutsche Bank, as agent for SABR, does exactly what the state court judgment enjoins SABR, its principal, from doing. The McLeods' Motion to Dismiss argues that (1) pursuant to Federal Rule of Civil Procedure 12(b)(1), this Court lacks jurisdiction over the case under the *Rooker-Feldman* doctrine, (2) Deutsche Bank's claim is barred by res judicata, and thus does not state a claim upon which relief can be granted, as provided by Rule 12(b)(6), and (3) Deutsche Bank's suit is untimely.

## II. LEGAL ANALYSIS

### A. Res Judicata

"The Full Faith and Credit Act, 28 U. S. C. § 1738, requires federal courts as well as state courts to give state judicial proceedings 'the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 519 (1986) (ellipses in original). Under Arizona law of "the doctrine of *res judicata*, a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Gilbert v. Bd. of Med. Exam'rs*, 155 Ariz. 169, 174, 745 P.2d 617, 622 (Ct. App. 1987). "A default judgment has the same *res judicata* effect as a judgment on the merits where the issues were litigated." *Norriega v. Machado*, 179 Ariz. 348, 353, 878 P.2d 1386, 1391 (Ct. App. 1994).

Here, Deutsche Bank asserts it is not bound by the Default Judgment because that judgment "was not entered as to [Deutsche Bank]." Doc. 16 at 11. In other words, Deutsche Bank's position is that "because [the Default Judgment] was taken against a

trust instead of the trustee representing the trust," *id.* at 12, Deutsche Bank, in its role as trustee, is not bound by the Default Judgment.

Under general principles of trust law, a trust is "a fiduciary relationship with respect to property … subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons." Restatement (Third) of Trusts § 2 (2003). That is, a trust is not itself capable of taking legal action, such as recording documents that affect title to real property, because it is no more than a relationship among different actors. To the extent that courts sometimes refer to trusts as legal entities, this terminology connotes only "the trust estate and the associated fiduciary relation between the trustee and the beneficiaries." *See id.* cmt. a. In this sense, a trustee may be said to owe duties "to 'the trust,'" but the trust is not capable, independent of the trustee, of managing the property that is held in trust. *See id.* Rather, it is only the trustee—"[t]he person who holds property in trust," *id.* § 3(3)—who can buy, sell, lease or otherwise dispose of property for the beneficiary's sake.

But those general principles of trust law, under which a judgment concerning trust property must be against the trustee, are not the only principles that may govern here. The Deutsche Bank/SABR trust concerned SABR's beneficial ownership of notes secured by Arizona deeds of trust on many properties. There are no common law deeds of trust under Arizona law. Deeds of trust are authorized and regulated only by statute. A.R.S. §§ 33-801 through 33-821; *see generally M & I Bank, FSB v. Coughlin*, 805 F. Supp. 2d 858, 861-63 (D. Ariz. 2011). Under those statutes, the beneficiary of the deed of trust may be sued and the trustee may not. "Any order of the court entered against the beneficiary is binding upon the trustee with respect to any actions that the trustee is authorized to take by the trust deed or by this chapter." A.R.S. § 33-807(E). Deutsche Bank was apparently set up as a trustee to hold the notes secured by the deeds of trust, but the statutory right and obligation to sue the beneficiary, not the trustee, may apply here. This trust holding deeds of trust may not so easily evade the Arizona rule directing

that actions be brought directly against the beneficiary of the deed of trust, rather than against the trustee who holds the formal title.

Stripped of Deutsche Bank's distracting labels, its argument is really that the state court erred in quieting title and enjoining actions as against the trust beneficiary rather than the trustee. That contention may or may not be correct, as noted in the preceding paragraph. But error does not dispense with res judicata—not in general and not here. "The lack of legal capacity of a person or organization named a party to an action does not prevent application of the rules of res judicata to the judgment therein unless the incapacity of the named party had a substantial adverse effect on the adequacy of the protection afforded his interests or the interests of others whom he represents." Restatement (Second) of Judgments § 35 (1982). Because both Deutsche Bank and SABR were served and appeared in the state court litigation prior to entry of the Default Judgment, there can be no prejudice to SABR—or to Deutsche Bank. Indeed, as the state court litigation stretched on for more than five years, Deutsche Bank neglected to seek relief from the Default Judgment, which on its face bars this later action.

Deutsche Bank now seeks, in effect, what it declined for five years to seek in the state court—an adjudication that the Default Judgment does not give what it plainly purports to give, and that it was error to grant the injunction it does give. Principles of res judicata bar Deutsche Bank from moving this case across the street to a new court and a new judge to make the motion it and SABR refused to make in the state court. Accordingly, Deutsche Bank's Complaint is barred by res judicata and will be dismissed for failure to state a claim upon which relief can be granted.

### B. Relief from the Default Judgment for Changed Circumstances

Deutsche Bank's refusal for five years to fix in the state court what it says has been wrong all along does not mean the McLeods get their house free and clear of what they borrowed. As noted above, the parties agree that the Default Judgment means only that SABR or its agent Deutsche Bank was not the beneficial owner of the note at the

time of the judgment. That necessarily means that the note was not effectively endorsed to one of them, which in turn means the note is still with the last holder. That holder can foreclose or endorse the note afresh to anyone it wants. A foreclosure based on a new and valid endorsement should be good.

Assuming the last holder again endorses the note to Deutsche Bank, the Default Judgment would need to be modified based on changed circumstances so that it did not prohibit foreclosure based on that new and valid endorsement. But a permanent injunction must be obeyed until modified by the issuing court. *See GTE Sylvania v. Consumers Union of the United States*, 445 U.S. 375, 386 (1980) (citing "the established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order" (citations omitted)). The addressee of an injunction may not violate the injunction and then defend on the basis that the injunction should be modified. That modification must be sought in advance in the issuing court, not some other court of the injunction addressee's choice. *See Sys. Fed'n No. 91 Ry. Emps.' Dep't v. Wright*, 364 U.S. 642, 647 (1961) ("The source of the power to modify is of course the fact that an injunction often requires continuing supervision *by the issuing court* and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief. … [T]he court cannot be required to disregard significant changes in law or facts if it is 'satisfied that what *it has been doing* has been turned through changing circumstances into an instrument of wrong.'" (emphasis added) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932))).

### C.     *Rooker-Feldman*

If res judicata principles alone do not bar Deutsche Bank from seeking this Court's permission to violate the plain language of the state court's Default Judgment, then the *Rooker-Feldman* doctrine does, even as narrowly understood. The *Rooker-Feldman* doctrine holds that federal district courts lack jurisdiction over "cases brought by state-

1 court losers complaining of injuries caused by state-court judgments rendered before the
2 district court proceedings commenced and inviting district court review and rejection of
3 those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284
4 (2005). Only the Supreme Court has jurisdiction over such cases. *Id.* at 283.

5 Deutsche Bank's Complaint does ask for adjudication that the state court's Default
6 Judgment is "invalid." Doc. 1 at 10. But in its Response Deutsche Bank retrenches and
7 says, "The instant action does not challenge the validity of the state court default
8 judgment, but simply requests a determination as to its scope and effect." Doc. 16 at 2.
9 Deutsche Bank now disclaims any request to overturn the Default Judgment, and the
10 Court holds Deutsche Bank to that renunciation. The renunciation necessarily precludes
11 any request to modify the Default Judgment so as to take this foreclosure action outside
12 its plain prohibition. If Deutsche Bank could now renounce its renunciation, its desired
13 relief would be barred by the *Rooker-Feldman* doctrine.

14 Notwithstanding res judicata and *Rooker-Feldman*, Deutsche Bank has remedies.
15 It can ask the state court to fix the purported error if it can work around its five-year delay
16 in asking. If Deutsche Bank obtains a new and valid endorsement of the note, it may be
17 able to modify the Default Judgment to allow foreclosure on the Property. Ariz. R. Civ.
18 P. 60(c)(6) (identical to Fed. R. Civ. P. 60(b)(6)).

19 Deutsche Bank has failed to state a claim upon which relief can be granted.
20 Because of the res judicata effects of the Default Judgment, there is nothing Deutsche
21 Bank could allege in an amended pleading that would cure the defects in its Complaint.
22 The *Rooker-Feldman* doctrine bars this Court from fixing any errors in the Default
23 Judgment. The Complaint and the action will therefore be dismissed without leave to
24 amend.

25 Resolving Defendants' Motion does not require applying Arizona's statutes of
26 limitations to this case. Accordingly, the Court will not address that issue.

27
28

1    IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 11) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing this action with prejudice, but without prejudice to seeking relief from the Default Judgment from the state court.  The Clerk shall terminate this case.

Dated this 1st day of December, 2014.

                                          Neil V. Wake
                                   United States District Judge