Robert W. Norman (SBN 025328)
HOUSER & ALLISON, APC
2929 N. Central Avenue, Suite 1560
Phoenix, AZ 85012
bnorman@houser-law.com
Ph: (480) 428-8370

Attorney for Plaintiff Deutsche Bank National Trust Company, as Trustee for Securitized Asset Backed Receivables LLC Trust 2007-NC2, Mortgage-Pass Through Certificates, Series 2007-NC2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deutsche Bank National Trust Company, as Trustee for Securitized Asset Backed Receivables LLC Trust 2007-NC2, Mortgage-Pass Through Certificates, Series 2007-NC2, <br><br> Plaintiff, <br><br> vs. <br><br> Kenneth McLeod and Carol Ann McLeod, Husband and Wife; Circle G At Riggs Homestead Ranch Homeowners Association; Maricopa County Sheriff's Office; Kristin Ann McLeod aka Kristin Ann Mason; State of Arizona, ex rel., Arizona Department of Revenue; Unknown Heirs and Devisees of Kenneth McLeod and Carol Ann McLeod. <br><br> Defendants. | Case No. 2:14-cv-01720-NVW <br><br> HON: Neil V. Wake <br><br> **PLAINTIFF'S TRIAL BRIEF REGARDING BREACH OF CONTRACT AND CONTRACT INTERPRETATION** |

In anticipation of the trial that is currently scheduled for June 25, 2019 in this matter, Plaintiff hereby submits its trial brief regarding breach of contract, which includes issues of contract interpretation, and a rebuttal of the McLeods' anticipated argument that they tendered the proper amounts to reinstate.

1

## I. INTRODUCTION

The issues in this case arise from contract. Specifically, the rights and obligations of the McLeods and Plaintiff as memorialized by the Note and Deed of Trust.[1] They are fairly straightforward – the McLeods borrowed $771,000.00 and agreed to make monthly payments to pay it back or they would be in default. Once in default, Plaintiff has the right to charge fees "for services performed in connection with the Borrower's default."[2] Arizona statute reflects this as well. Under A.R.S. § 33-813(B) the McLeods are required to pay "the entire amount then due" including all fees pertaining to the trustee's sale to avoid foreclosure. No provision of the Note, Deed of Trust or any statute allows the McLeods to cure the default and avoid foreclosure by paying the amount *they believe* is due. It is not an issue of belief, it is an issue of how much is owing.

Here, there is no dispute that the McLeods breached on at least four separate occasions. However, the McLeods claim they reinstated on May 15, 2008 and June 2, 2008. This argument fails because while the McLeods did in fact tender funds on these dates, the McLeods failed to tender the correct amounts so the payments were returned. First, the McLeods tendered $13,047.98 on May 15, 2008 but the correct reinstatement at that time was $22,127.72. Then, the McLeods attempted to reinstate again on June 2, 2008 by submitted a wire transfer of $22,405.90. However, this amount was missing the June payment so the total amount to reinstate on June 2, 2008 was $28,508.95.

Importantly, after the June 2, 2008 attempted reinstatement, the McLeods failed to make any further payments. In this sense, whether they tendered the proper reinstatement amounts is not material because they still would have had to make the June 2008 payment but to date (more than 11 years later) they have still failed to make this payment. In summary, the McLeods breached, failed to reinstate and therefore Plaintiff has the right to foreclose. These rights are set forth in the Note and Deed of Trust that the McLeods agreed to.

---

[1] See Stipulated Trial Exhibits 1 (Bates D0167-D0171) and 2 (Bates D0172-D0197).
[2] See Stipulated Trial Exhibit 2, ¶ 14 (Bates D0181).

## II. ARIZONA LAW APPLIES

The claim for judicial foreclosure is a state-law claim and therefore this Court must apply Arizona's substantive law. *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996).

## III. PARTIES' RIGHTS AND OBLIGATIONS UNDER NOTE AND DEED OF TRUST

The facts concerning the payments tendered by the McLeods, and the dates, are not in dispute.[3] What is disputed is whether the amounts tendered were sufficient to reinstate. This includes the issue of whether Plaintiff had the right to charge the amounts that were owing on May 15, 2008 and June 2, 2008. These rights and obligations are governed by the Note and Deed of Trust, which are written contracts. Therefore, these are issues of contract interpretation.

### a. Extrinsic Evidence Not Needed to Interpret Contract

In Arizona, interpretation of a contract is a question of law. *Keggi v. Northbrook Property and Cas. Ins. Co.,* 199 Ariz. 43, 46, 13 P.3d 785, 788 (App. 2000). Contracts are interpreted according to their ordinary and plain meaning unless otherwise defined in the contract itself. *Id.* When interpreting a contract, the court must attempt to give effect to the intent of the parties at the time the contract was entered. *Polk v. Koerner*, 111 Ariz. 493, 495, 533 P.2d 660, 662 (1975). In determining the parties' intent, "we first consider the plain meaning of the words in the context of the contract as a whole." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, 218 P.3d 1045, 1050 (App. 2009). The court will only accept extrinsic evidence of the meaning intended by the parties if the court determines that the contract language is "reasonably susceptible" to the interpretation suggested by the proponent of the extrinsic evidence. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154, 854 P.2d 1134, 1140 (1993). Whether the contract language is reasonably susceptible to more than one interpretation is a question of law we review de novo. *In re Estate of Lamparella*, 210 Ariz. 246, 250, 109 P.3d 959,

---

[3] See Joint Pre Trial Order, pg. 4.

963 (App. 2005); *see ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, 246 P.3d 938, 941 (App. 2010).

Here, as set forth more fully below, the terms of the Note and Deed of Trust are simple and straightforward. The terms and obligations are clear, simple and straightforward. There is no need for extrinsic evidence to determine their meaning.

### b. Pertinent Contract Provisions

The primary rights and obligations include: (1) the McLeods' obligation to make timely payments, (2) Plaintiff's right to foreclose in the event of default, and (3) Plaintiff's broad right to add expenses incurred to the loan balance in the event of default.

#### i. McLeods Are Required To Make Timely Monthly Payments.

The Note and Deed of Trust plainly state that the McLeods were obligated to make monthly payments. In fact, the first section of the Note is called "Borrower's promise to pay."[4] Section 3 of the Note goes into the payment obligations in more detail. This section states: "I will pay principal and interest by making a payment every month."[5] The section also clarifies that the monthly payments would be "on the first day of each month beginning on December 1, 2006."[6] Finally, the McLeods agreed to make payments "...until I have paid all of the principal and interest and any other charges described below that I may owe under this Note."[7] The Deed of Trust also memorializes the obligation to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.[8]

#### ii. Plaintiff Has The Right to Return Impartial Payments.

There are also specific instructions concerning how to make payments, and when a payment is deemed "received" and when Plaintiff may reject impartial payments.

The Deed of Trust states "Payments are deemed received by Lender when

---

[4] See Stipulated Trial Exhibit 1 – Adjustable Rate Note, pg. 1 (Bates D0167).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] See Stipulated Trial Exhibit 2 – Deed of Trust, pg. 4, ¶ 1 (Bates D0175).

4

1 received at the location designated in the Note or at other such location as may be
2 designated by Lender in accordance with the notice provisions in Section 15.[9]

3 In the event the Lender does not "receive" a full payment, the Deed of Trust states:
4 "Lender may return any payment or partial payment if the payment or partial payments
5 are insufficient to bring the Loan current."[10] The Deed of Trust goes on to explain that
6 even if the Lender accepts a partial payment in its discretion that would not amount to a
7 waiver of any rights to refuse such payment or partial payment in the future.[11]

8 Finally, the Deed of Trust explains that "no offset or claim which Borrower might
9 have now or in the future against Lender shall relieve Borrower from making payments
10 due under the Note and this Security Instrument or performing the covenants and
11 agreements secured by this Security Instrument."[12]

### iii. If The McLeods Fail To Make Payments, They Are In Default.

The Note states: "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."[13]

There are several consequences associated with a "default." First, the Note permits collection of late fees calculated at 5% of the overdue principal and interest payment.[14] Second, the Deed of Trust states "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee."[15] The

---

[9] See Stipulated Trial Exhibit 2 – Deed of Trust, pg. 4, ¶ 1 (Bates D0175).
[10] See Stipulated Trial Exhibit 2 – Deed of Trust, pg. 4, ¶ 1 (Bates D0175).
[11] *Id.*
[12] *Id.*
[13] See Stipulated Trial Exhibit 1 – Adjustable Rate Note, pg. 3 (Bates D0169).
[14] See Stipulated Trial Exhibit 1 – Adjustable Rate Note, pg. 3 (Bates D0169).
[15] See Stipulated Trial Exhibit 2 – Deed of Trust, pg. 10, ¶ 14 ("Loan Charges") (Bates D0181).

Deed of Trust also confirms that "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22 ("Acceleration; Remedies") including, but not limited to, reasonable attorneys' fees and costs of title evidence.[16]

The second consequence of default is Plaintiff's right to accelerate all "sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."[17]  However, before acceleration can occur, Plaintiff must provide the McLeods an opportunity to reinstate.

### iv. McLeods' Have The Right to Reinstate By Paying The Entire Amount Due.

The Note and Deed of Trust give the McLeods the right to reinstate both before and after acceleration. In a section called "Borrower's Right to Reinstate After Acceleration," the Deed of Trust explains that Borrower has the right to reinstate *on the condition that* "the Borrower (a) pays Lender all sums which then would be due under this Security Agreement and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged."[18]

A similar right is codified in A.R.S. § 33-813, which permits a trustor to "reinstate by paying to the beneficiary the entire amount then due under the terms of the contract or contracts or trust deed, other than such portion of the principal as would not then be due had no default occurred, by curing all other defaults and by paying the amounts due under

---

[16] See Stipulated Trial Exhibit 2 – Deed of Trust, pg. 13, ¶ 22 (Bates D0184).
[17] See Stipulated Trial Exhibit 2 – Deed of Trust, pg. 13, ¶ 22 (Bates D0184).
[18] See Stipulated Trial Exhibit 2 – Deed of Trust, pg. 11, ¶ 19 (Bates D0182).

subsection B." *Chaparral Development v. RHMED Intern., Inc.,* 170 Ariz. 309, 823 P.2d 1317 (App. 1991).

A.R.S. § 33-813(B) sets forth the following amounts:

> "1. Payment of the entire amount then due.
> 2. Payment of costs and expenses incurred in enforcing the terms of such contract or trust deed. These costs and expenses may include the following:
> > (a) Reasonable costs for mailing and photocopying.
> > (b) Actual expenses incurred for recording, publication, posting of notice of sale, auctioneer's fee, postponement fees and title costs.
> > (c) Other reasonable costs and expenses.
> 3. Payment of the recording fee for a cancellation of notice of sale.
> 4. Payment of the trustee's fees, in an amount not to exceed six hundred dollars or one-half of one per cent of the entire unpaid principal sum secured, whichever is greater.
> 5. Payment of expenses and reasonable attorney fees that are not otherwise provided for in this section and that are incurred in protecting and preserving the beneficiary's interest in the trust property."

In summary, in order to reinstate the McLeods are required to tender "all amounts due" and this includes attorneys' fees, fees to record the trustee's sale and all fees that are incurred as a result of the default.

### v. Effect of Reinstatement

The Deed of Trust confirms that once reinstated, "this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred."[19] Stated differently, reinstatement does not change the McLeods' obligation to continue to make payments.

### IV. MCLEODS FAILED TO TENDER PROPER AMOUNTS

In this case, there are two attempted reinstatement dates: May 15, 2008 and June 2, 2008. On these two dates, Plaintiff's servicer ("HomEq") received payments from the McLeods attempting to exercise their right to reinstate. At the outset, it is important to note that HomEq specifically warned the McLeods that the reinstatement figures could

---

[19] See Stipulated Trial Exhibit 2 – Deed of Trust, pg. 11, ¶ 19 (Bates D0182).

7

1  change and therefore it was very important to call HomEq on the day the reinstatement
2  funds are sent. For example, the April 2, 2008 Default Letter states: "Because interest
3  accruals, late charges and other expenses may be additionally incurred, the amount
4  required to bring the Account current on the day you actually deliver your payment to
5  HomEq may be greater than the amount provided above. Accordingly, you should contact
6  HomEq at 1-800-795-5125, Monday - Thursday 5:00AM-9:00PM, Friday 5:00AM-
7  6:00PM, Saturday 5:00AM-1:30PM, Sunday 8:00AM-5:00PM, Pacific Time to obtain
8  the exact amount needed to bring the Account current prior to remitting payment."[20] The
9  McLeods had previously received three similar default letters[21] containing identical
10 language and the McLeods did in fact reinstate after those defaults. Therefore, the
11 McLeods were on notice that it was very important to contact HomEq to obtain the
12 precise amount to reinstate before remitting their payment.

### a. May 15, 2008 Attempt to Reinstate

In April 2008 the subject loan was due for the March 1, 2008 payment.[22] Therefore, HomEq sent a letter explaining that to bring the loan current, avoid acceleration and avoid foreclosure, the McLeods were required to remit $12,762.46 no later than May 7, 2008.[23] However, as noted above, the letter also explained that it was very important to contact HomEq to confirm the amount required to reinstate "on the day you actually deliver your payment."[24] Stated differently – the McLeods were on notice that the reinstatement amount could change.

The McLeods failed to make a payment by the May 7, 2008 deadline.[25] Instead,

---

[20] See Stipulated Trial Exhibit 16 – April 2, 2008 Default Letter (Bates D0306).
[21] See Stipulated Trial Exhibits 10 – August 15, 2007 Default Letter (Bates D0283-D0284), 11 – November 15, 2007 Default Letter (Bates D0287-D0288), and 14 – February 4, 2008 Default Letter (Bates D0301-D0302).
[22] See Stipulated Trial Exhibit 16 – April 2, 2008 Default Letter (Bates D0306).
[23] *Id.*
[24] *Id.*
[25] See Joint Pre Trial Order, pg. 4.

the McLeods tendered a payment on May 15, 2008 in the amount of $13,047.98.[26] The McLeods calculated this payment on their own, without calling into HomEq, as evidenced by the handwritten notes that were delivered with the check.[27]

The proper reinstatement amount on May 15, 2008 was $22,127.72.[28] This comprised:

| Principal & Interest (March, April & May) | $16,690.68 (3 x $5,563.56) |
|---|---|
| Escrow Payments | $1,618.47 (3 x $539.49) |
| Late Charges | $834.54 (3 x $278.18) |
| Property Inspection | $8.50 |
| Breach Letter | $7.34 |
| Tiffany & Bosco Fees | $2,968.19 |
| **Total** | **$22,127.72** |

Importantly, even removing all of the line items *except* principal & interest – the McLeods still would not have tendered the proper amount to reinstate. In such a hypothetical, the total amount to reinstate would have been $16,690.68 and the McLeods only tendered $13,047.98.

Escrow payments, late charges, property inspection fees, breach letter fee and Tiffany & Bosco fees are all permitted under the Note and Deed of Trust. The loan was escrowed. The October 13, 2006 letter outlining the first payment indicated total escrow payments of $397.98 (tax) and $187.52 (insurance).[29] This amount changed to $539.49 in 2008 as shown by the Escrow Account Disclosure Statement.[30] Late charges are

---

[26] *Id.*
[27] See Stipulated Trial Exhibit 21 – May 2008 Payment Communications (Bates D0318).
[28] See Stipulated Trial Exhibit 66 – May 15, 2008 Payment-Reinstatement Analysis (Bates D3121).
[29] See Stipulated Trial Exhibit 8 – October 13, 2006 New Century Letter (Bates D0271-0272).
[30] See Stipulated Trial Exhibit 61 – December 20, 2007 Escrow Account Disclosure Statement (Bates D0294-0295).

9

specifically outlined and permitted in the Note.[31]  The property inspection fee is permitted under ¶¶ 14 and 19 of the Deed of Trust ("property inspection" is specifically referenced as a recoverable item).  Likewise, the "breach letter" is a service performed in connection with the default, and therefore recoverable under ¶ 14 of the Deed of Trust.

Finally, the fees incurred by Tiffany & Bosco in connection with the trustee's sale are recoverable under the Deed of Trust and the Arizona-specific costs, such as preparing and recording the notice of trustee's sale, are permissible under A.R.S. § 33-813(B)(3) ("payment of the recording fee for a cancellation of notice of sale") and (4) ("payment of trustee's fees").  These are also included in the broader language contained in the Deed of Trust.[32]

Again, just to reiterate even removing the escrow payments, late charges, property inspection fees, breach letter fee and Tiffany & Bosco fees, the $13,047.98 tendered by the McLeods still would not have been enough to reinstate because it did not cover principal and interest.

**b.  June 2, 2008 Attempt to Reinstate**

The record supports two further attempts to reinstate.  First, a Bank of America "Funds Transfer Request" shows the McLeods tried to wire funds in the amount of $22,405.90 "to be sent" on May 30, 2008.[33]  However, in the portion where "account number" was supposed to be, the McLeods mistakenly put HomEq's routing number.[34]  The McLeods corrected this error the next day, which was a Saturday.[35]  The McLeods claim that HomEq accepted this wire transfer and then rejected it the same day but this is false because this could have been reflected in the comment notes, and there is record of

---

[31] See Stipulated Trial Exhibit 1 – Adjustable Rate Note, pg. 3, ¶ 7 (Bates D0169).
[32] See Stipulated Trial Exhibit 2 – Deed of Trust (Bates D0172-D0197).
[33] See Stipulated Trial Exhibit 25 – May 30, 2008 Bank of America Wire Transfer (Bates D3027).
[34] See Stipulated Trial Exhibit 25 – May 30, 2008 Bank of America Wire Transfer (Bates D3027).
[35] See Stipulated Trial Exhibit 26 – May 31, 2008 Bank of America Wire Transfer (Bates D3025).

1  this wire transfer being received, and there is no record of HomEq calling the McLeods
2  about this wire transfer on May 30, 2008 or even May 31, 2008.[36]
3       The second "Funds Transfer Request" included the account number (instead of the
4  routing number) so it went through and HomEq received the funds on June 2, 2008.[37]
5  However, the reinstatement amount on June 2, 2008 had changed because now the June
6  payment was due:[38]

| Principal & Interest (March, April, May & June) | $22,254.24 (4 x $5,563.56) |
|---|---|
| Escrow Payments | $2,157.96 (4 x $539.49) |
| Late Charges | $1,112.72 (4 x $278.18) |
| Property Inspection | $8.50 |
| Breach Letter | $7.34 |
| Tiffany & Bosco Fees | $2,968.19 |
| **Total** | **$28,508.95** |

16   The reinstatement figures, and authority for charging the line items, are essentially
17  identical to the May 15, 2008 reinstatement analysis except one additional month was
18  added.
19       Importantly, the $22,405.90 just barely covered the March, April, May and June
20  principal and interest payments alone. The amount tendered did not even cover the
21  additional amounts required for escrow.

**c. McLeods Made No Further Attempts To Reinstate**

23       The McLeods had until the trustee's sale to reinstate, but failed to do so. Instead
24  of reinstating, they filed an action in state court and obtained an injunction that prevented

---

[36] See Stipulated Trial Exhibit 3 – HomEq Comment Notes (Bates D2937).
[37] See Joint Pre Trial Order, pg. 4.
[38] See Stipulated Trial Exhibit 67 (Bates D3122).

the trustee's sale and the trustee's sale was ultimately canceled.[39]  In fact, during one phone conversation on June 10, 2008 HomEq asked the McLeods why they could not just remit the June payment (in addition to the $22,405.90 tendered) to bring the loan current.[40]  HomEq also sent a forbearance agreement, and the McLeods could have signed the forbearance agreement *or* tendered the full reinstatement at any time but refused to do so.[41]  As evidenced by the handwritten statements that Mr. McLeod wrote all over the forbearance agreement offered, Mr. McLeod had no interest at that time in reinstating.[42]

## V.   CONCLUSION

In summary, as a matter of pure contract interpretation, the McLeods breached by failing to reinstate and therefore Plaintiff had the right to accelerate the entire balance and file this foreclosure action.

Dated: June 21, 2019                    **HOUSER & ALLISON, APC**

                                        */s/ Robert W. Norman, Jr.*
                                        Robert W. Norman, Jr.
                                        Attorneys for Plaintiff
                                        Deutsche Bank National Trust Company, As Trustee for Securitized Asset Backed Receivables LLC Trust 2007-NC2, Mortgage-Pass Through Certificates, Series 2007-NC2

---

[39] See Stipulated Trial Exhibit 35 (Bates D1683); See Stipulated Trial Exhibit 46; and See Stipulated Trial Exhibit 44.
[40] See Stipulated Trial Exhibit 3 – HomEq Comment Notes (Bates D2937).
[41] See Stipulated Trial Exhibit 58 – Forbearance Agreement (Bates D0341-D0346).
[42] See Stipulated Trial Exhibit 58 – Forbearance Agreement (Bates D0341-D0346).

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Beth Findsen, Esq.
Price Law Group
8245 North 85th Way
Scottsdale, AZ 85258
beth@pricelawgroup.com
Attorney for Defendants Kenneth and Carol McLeod

s/ Paige Kleinwolterink
Paige Kleinwolterink