1  Robert W. Norman (SBN 025328)
   HOUSER & ALLISON, APC
2  2929 N. Central Avenue, Suite 1560
3  Phoenix, AZ 85012
   bnorman@houser-law.com
4  Ph: (480) 428-8370

5  Attorney for Plaintiff Deutsche Bank National Trust Company, as Trustee for Securitized
6  Asset Backed Receivables LLC Trust 2007-NC2, Mortgage-Pass Through Certificates,
   Series 2007-NC2
7
8              **UNITED STATES DISTRICT COURT**
               **FOR THE DISTRICT OF ARIZONA**
9

| | |
|---|---|
| 10  Deutsche Bank National Trust Company, as Trustee for Securitized Asset Backed<br>11  Receivables LLC Trust 2007-NC2, Mortgage-Pass Through Certificates,<br>12  Series 2007-NC2,<br><br>13              Plaintiff,<br>14  <br>   vs.<br>15  <br>16  Kenneth McLeod and Carol Ann McLeod, Husband and Wife; Circle G At Riggs<br>17  Homestead Ranch Homeowners Association; Maricopa County Sheriff's<br>18  Office; Kristin Ann McLeod aka Kristin Ann Mason; State of Arizona, ex rel.,<br>19  Arizona Department of Revenue;<br>20  Unknown Heirs and Devisees of Kenneth McLeod and Carol Ann McLeod.<br>21  <br>22              Defendants. | Case No. 2:14-cv-01720-NVW<br><br>HON: Neil V. Wake<br><br>**PLAINTIFF'S TRIAL BRIEF REGARDING STATUTE OF LIMITATIONS AND LACHES** |

23
24        In anticipation of the trial that is currently scheduled for June 25, 2019 in this
25  matter, Plaintiff hereby submits its trial brief concerning Defendants' anticipated
26  argument that the statute of limitations/laches bars this action.  As set forth herein, it does
27  not.

28

1

## I.     INTRODUCTION

Defendants Kenneth McLeod and Carol Ann McLeod ("McLeods") raised the affirmative defenses of "statute of limitations" and "laches" in their Amended Answer [Doc. 126].  As a brief summary, the McLeods allege that because the subject loan was "accelerated" when the first Notice of Trustee's Sale was recorded (May 29, 2008) that is the accrual date for purposes of calculating the six year limitations period.   This affirmative defense fails for several reasons.  First, only 63 days of tolling is needed to overcome the statute of limitations defense assuming the accrual date is May 29, 2008 but the statute of limitations was tolled for much longer than this.   The state court injunction preventing foreclosure that was in place from at least October 29, 2008 to March 14, 2014 tolled the statute of limitations for **1,962 days**. Further, the statute of limitations was tolled during the time period that the McLeods argued the 2008 Default Judgment barred foreclosure.  This time period lasted **3,360 days** – from November 24, 2008, which was the date the state court filed the default judgment, until February 5, 2018, which was the date the default judgment was ultimately vacated.  Further, Plaintiff revoked acceleration and therefore the applicable acceleration date was the date this foreclosure was filed (July 31, 2014) and not May 29, 2008.  Finally, equitable tolling prevents the injustice the McLeods seek – which is a free house.

For essentially the same reasons, laches does not apply.  Laches is an equitable defense and equity does not favor the McLeods.  The alleged "delay" in foreclosing was caused exclusively by the McLeods.  Moreover, the McLeods have not been prejudiced by the alleged delay – quite the opposite.  Due to the delay they have had the benefit of living in the subject property for more than ten years without having to make any rent payments, mortgage payments or property tax payments.

## II.     ARIZONA LAW APPLIES

The claim for judicial foreclosure is a state-law claim and therefore this Court must apply Arizona's substantive law.  *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996).  This includes construction and application of the relevant statute of

1    limitations.  *Albano v. Shea Homes Ltd. P'ship,* 634 F.3d 524, 530 (9th Cir. 2011).

2    **III.   STATUTE OF LIMITATIONS**

3    **a. There are two methods of determining accrual date and under each**

4    **method the statute of limitations defense fails.**

5    In Arizona, the statute of limitations defense is disfavored.  *Florez v. Sargeant,*

6    185 Ariz. 521, 537, 917 P.2d 250, 266 (1996).  In judicial foreclosures, the statute of

7    limitations is six years. A.R.S. § 33-816; A.R.S. § 12-548; *Navy Fed. Credit Union v.*

8    *Jones,* 187 Ariz. 493, 930 P.2d 1007, 1009 (Ariz. Ct. App. 1996).

9    Arizona has established two separate methods of determining the accrual date for

10   installment obligations with an optional acceleration clause. First, an action accrues and

11   "the statute of limitations runs against each installment from the time it becomes due."

12   *Navy Fed. Credit Union v. Jones,* 187 Ariz. 493, 930 P.2d 1007, 1009 (Ariz. Ct. App.

13   1996).  Second, an action accrues when a lender exercises "the optional acceleration

14   clause by demanding full payment of the note before all installments become due."  *Id.*  at

15   1009.  The general rule is that in judicial foreclosure actions the "acceleration" date is the

16   date the judicial foreclosure was filed.  *Navy Fed. Credit Union v. Jones,* 187 Ariz. 493,

17   495, 930 P.2d 1007, 1009 (App. 1996) ("[A] lender exercises its option to accelerate by

18   filing a lawsuit for the entire debt").  However, the Arizona Court of Appeals recently

19   concluded that recording a notice of trustee's sale also constitutes an affirmative act of

20   the debt's acceleration.  *Andra R Miller Designs, LLC v. US Bank, NA,* 244 Ariz. 265,

21   270, 418 P.3d 1038, 1043 (App. 2018).

22   Here, under the first method, the statute of limitations will continue to run on each

23   missed installment payment until the maturity date of November 1, 2036.[1]  Thus, under

24   the first method the statute of limitations does not bar foreclosure.

25   With respect to the second method, under the traditional rule the acceleration date

26   is July 31, 2014 or the date this foreclosure action was filed.  Thus, under the traditional

27   rule for judicial foreclosures the statute of limitations would not run until July 31, 2020.

28

---

[1] See Stipulated Trial Exhibit 1 – Adjustable Rate Note, pg. 1 (Bates D0167).

Even using September 8, 2008 as the accrual date – i.e. the most recent Notice of Trustee's Sale, the statute of limitations would not bar foreclosure.  Thus, the McLeods' statute of limitations defense hinges on the May 29, 2008 notice of trustee's sale recording date.  However, as set forth below, even using this date the statute of limitations does not bar foreclosure because there is more than 63 days of tolling and/or Plaintiff revoked acceleration.

> **b.  Two separate applications of "legal tolling" apply equating to either 1,962 days or 3,360 days of tolling, either of which is more than the 63 days needed.**

Even assuming this Court adopts the argument that the Loan was "accelerated" with the recording of the May 29, 2008 Notice of Trustee's Sale, that would mean that only 63 days of tolling is needed to defeat the McLeods' statute of limitations defense. Here, there are two separate applications of the doctrine of "legal tolling."  First, the statute of limitations was tolled during the time period that the injunction issued in state court prohibited foreclosure which was from *at least* October 29, 2008 (date state court confirmed injunction prevents foreclosure) until March 14, 2014 (date state court ruled that matter was resolved) or **1,962 days of tolling**.[2]  Second, "legal tolling" applied while the parties litigated the effect, scope and nature of the 2008 Default Judgment, which was from November 24, 2008 (date default judgment filed) to February 5, 2018 (date default judgment vacated), or **3,360 days of tolling**.[3]

In Arizona the doctrine of "legal tolling" is supported by almost 100 years of precedent. *City of Phoenix v. Sittenfeld,* 53 Ariz. 240, 249, 88 P.2d 83, 87 (1939) ("It is generally held that where the decision in a pending action is practically conclusive as to the nature and extent of a party's rights, and where his success thereunder is a prerequisite to his right to maintain a new action, the statute does not begin to run as to the new action

---

[2] See Stipulated Trial Exhibit 47 – October 29, 2008 Minute Entry in State Court Action and Stipulated Trial Exhibit 50 – March 14, 2014 Minute Entry in State Court Action.

[3] See Stipulated Trial Exhibit 62 – Judgment Vacated Status Conference Set and Stipulated Trial Exhibit 63 – Final Rule 54(C) Judgment.

1    until the determination of the pending suit, which decides whether the new right of action

2    exists"); *Desruisseah v. Cameron,* 125 Ariz. 511, 611 P.2d 98 (App. 1980) (period of

3    limitations is tolled pending the outcome of appeal where "the decision in a pending

4    action is particularly conclusive as to the nature and extent of a party's rights to the point

5    where resolution of the pending action is a prerequisite for maintaining a new action");

6    *Valley Brewing Co., Inc. v. McElhanon,* 2007 WL 5447049, Arizona Court of Appeals

7    (October 25, 2007) (statute of limitations tolled because party was precluded from

8    "amending its complaint to assert the trademark violation because any further

9    proceedings had been stayed and the trial court had lost jurisdiction pending the appeal").

10    Outside Arizona, courts across the county and reputable legal treatises have

11    confirmed that "where a person is prevented from exercising a legal remedy by the

12    pendency of legal proceedings, the time during which he or she is thus prevented should

13    not be counted against that person in determining whether the statute of limitations has

14    barred the exercise of the right." 54 Corpus Juris Secundum § 176 (citing case law from

15    various jurisdictions).

16    This doctrine applies to a number of different situations, including where the

17    issuance of an injunction prevents the action. "In the absence of a statute to the contrary,

18    the issuance of an injunction that prevents maintenance of prosecution of an action

19    ordinarily suspends the running of the statute of limitations with respect thereto." 54

20    Corus Juris Secundum § 180 ("Stay of Proceedings – By Injunction) (citing *Van Build,*

21    *Inc. v. City of Reno,* 622 F.Supp.97 (D. Nev. 1985); *First Citizens Bank & Trust Co. v.*

22    *Martin,* 44 N.C. App. 261, 261 S.E.2d 145 (1979); *Turner and Boisseau, Chartered v.*

23    *Lowrance,* 18 Kan. App. 2d 332, 852 P.2d 517 (1993)).

24    The doctrine also applies where "the decision in a pending action is particularly

25    conclusive as to the nature and extent of a party's rights to the point where resolution of

26    the pending action is a prerequisite for maintaining a new action." *Desruisseah v.*

27    *Cameron,* 125 Ariz. 511, 611 P.2d 98 (App. 1980).

28

1

### i.   Tolling Pursuant to Injunction.

2    Here, the McLeods filed an action in state court on July 21, 2008 with the specific

3   purpose of "halting" the trustee's sale that was scheduled for August 28, 2008.[4]  In fact,

4   the original pleading was called "Application for Temporary Restraining Order to Halt

5   Trustee Sale of Residential Property and Request for Permanent Injunction."  Then, on

6   August 12, 2008 a minute entry was filed stating "The parties agree in open court that the

7   Deed of Trust sale scheduled for August 28, 2008 will be postponed indefinitely until this

8   matter can be resolved."[5]  Not only was the injunction issued, the McLeods *actively*

9   sought to enforce the injunction.  On September 22, 2008 the McLeods filed a lengthy

10   brief called "Plaintiff's Motion to Enforce Prior Order of the Court" which set forth the

11   McLeods' position that Plaintiff could not foreclose and seeking an order "to quash" a

12   subsequent notice of trustee's sale that had been recorded.[6]  At a subsequent hearing on

13   October 29, 2008, it was confirmed that the trustee's sale had been canceled in light of

14   the injunction.[7]

15    For years Plaintiff complied with the injunction and did not take any acts to

16   exercise its right to foreclose aside from defending the state court action.  Then, at a

17   hearing on March 14, 2014, the state court ruled that "this matter is resolved and that no

18   further proceedings are necessary or appropriate."[8]  At the hearing, there was discussion

19   concerning a "new foreclosure action" and the court pointed out that "…he is probably

20   going to advise his clients that they should initiate a new foreclosure action, and you're

21   going to have to start all over again …."[9]  It was not until this ruling that Plaintiff was

22

23

---

24   [4] See Stipulated Trial Exhibit 33 – May 29, 2008 Notice of Trustee's Sale (Bates D0137-D0138).

25   [5] See Stipulated Trial Exhibit 46 – August 12, 2008 Minute Entry in State Court Action.

26   [6] See Stipulated Trial Exhibit 45 –September 22, 2008 Motion to Enforce Prior Order of Court and Memorandum (Bates D3093-D3103).

27   [7] See Stipulated Trial Exhibit 47 – October 29, 2008 Minute Entry in State Court Action.

[8] See Stipulated Trial Exhibit 50 – March 14, 2014 Minute Entry in State Court Action.

28   [9] See Stipulated Trial Exhibit 51, pg. 13 – March 14, 2014 Transcript from State Court Action Proceedings.

1  permitted to file a "new foreclosure action" which Plaintiff did by filing the subject

2  action.

3         **ii.    Tolling Pursuant to 2008 Default Judgment Litigation.**

4        The *Sittenfeld* doctrine not only applies where an action is prevented outright (i.e.

5  where an injunction bars the action) it also applies where "the decision in a pending

6  action is particularly conclusive as to the nature and extent of a party's rights to the point

7  where resolution of the pending action is a prerequisite for maintaining a new action."

8  *Desruisseah v. Cameron,* 125 Ariz. 511, 611 P.2d 98 (App. 1980).

9        In *Triyar Capital, LLC v. REM Investment Company,* the Arizona Court of

10  Appeals held that the statute of limitations was tolled in light of litigation surrounding a

11  court order "expunging a void mortgage" that was ultimately reversed.   2017 WL

12  1406375 * 8, Arizona Court of Appeals (April 20, 2017).  With respect to tolling, the

13  Arizona Court of Appeals ruled that the statute of limitations was tolled from the date of

14  the order "expunging the void mortgage" (October 2009) up until the date the Court of

15  Appeals had reversed the order "expunging the void mortgage" (April 2012).

16        Applying the *Triyar Capital, LLC* analysis to this case, the statute of limitations

17  was tolled from November 24, 2008 (date the default judgment was entered) to February

18  5, 2018 (date default judgment vacated) which amounts to **3,360 days of tolling**.  As this

19  Court confirmed in its order of dismissal [Doc. 21] the McLeods asserted in this action

20  that they had obtained a 2008 Default Judgment[10] and the 2008 Default Judgment barred

21  foreclosure.[11]  This Court recognized that this action could not move forward *until* the

22  issues concerning the effect and scope of the 2008 Default Judgment were adjudicated

23  and that is why this Court dismissed this action *without prejudice* [Doc. 22]. The

24  dismissal was later reversed by the 9th Circuit Court of Appeals, but that was because by

25  that time the 2008 Default Judgment had been vacated.  The issue of whether or not the

26  

27  

28  [10] See Stipulated Trial Exhibit 40 – 2008 Default Judgment filed in State Court Action
(Bates D1768-D1770).

[11] See Also Defendants' Motion to Dismiss and Reply [Docs. 11 and 17].

1   2008 Default Judgment barred foreclosure was not adjudicated until February 5, 2018

2   when the state court issued an order vacating the 2008 Default Judgment pursuant to a

3   mandate issued by the Arizona Court of Appeals.[12]

4          For years, even before the McLeods raised the issue with this Court, the McLeods

5   had taken the position that the 2008 Default Judgment barred foreclosure.  In fact, at the

6   March 14, 2014 hearing the state court relied upon this argument to make its

7   determination (later reversed on appeal) that the 2008 Default Judgment was "the only

8   relief that you asked for in your complaint."[13]  At the March 14, 2014 hearing, there was

9   discussion concerning a "new foreclosure action" and the court pointed out that "…he is

10  probably going to advise his clients that they should initiate a new foreclosure action, and

11  you're going to have to start all over again, and you're going to have to rely on that 2008

12  order."[14]  Thus, the McLeods' position was crystal clear at the March 14, 2014 hearing

13  that they viewed the 2008 Default Judgment as forever barring foreclosure.

14         The McLeods even took steps outside the courthouse to cement their position.  For

15  example, citing the 2008 Default Judgment, they asked the Maricopa County Sheriff to

16  issue a "Sheriff's Deed" in favor of the McLeods.[15]  Since the McLeods already own the

17  subject property, the only rational explanation for this action was to assert that the 2008

18  Default Judgment conveyed the subject property free and clear of all liens.  The McLeods

19  even recorded a "Judgment Renewal Affidavit" that was signed on August 30, 2013, filed

20  with the state court and also recorded the same date.[16]  A comment note dated June 17,

21

22

23  _____

24  [12] See Stipulated Trial Exhibit 62 – Judgment Vacated Status Conference Set.
    [13] See Stipulated Trial Exhibit 51, pg. 6 – March 14, 2014 Transcript from State Court

25  Action Proceedings.
    [14] See Stipulated Trial Exhibit 51, pg. 13 – March 14, 2014 Transcript from State Court

26  Action Proceedings.
    [15] See Stipulated Trial Exhibit 43 – March 11, 2014 Sheriff's Levy on Real Estate (Bates

27  D1839-D1843).
    [16] See Stipulated Trial Exhibit 41 – September 20, 2013 Renewal Judgment (Bates

28  D3063-D3066).

2010 shows that the McLeods asserted that he does not have a mortgage listed on the property.[17]

### iii.     Tolling Pursuant to State Court Action.

Similar to the arguments above, and aside from the 2008 Default Judgment, the issue of whether Plaintiff had the right to foreclose was the essence of the state court action itself.  The McLeods' assertion in the state court action (similar to their defenses in this action) was that Plaintiff did not have the right to foreclose for a number of reasons, including that the McLeods tendered the proper amount to reinstate and also claimed that Plaintiff was no longer the holder of the note due to the securitization process, amongst other arguments all of which are set forth in the McLeods' lengthy complaint which had 14 separate counts.[18]   Under this analysis, the statute of limitations was tolled from July 21, 2008 (date complaint was filed) to June 7, 2018 (date of final judgment) or **3,608 days**.

### c. Since the McLeods' own actions prevented foreclosure, equitable tolling applies.

In Arizona, "equitable tolling is appropriate when it would effectuate: 1) the policies underlying the statute; and 2) the purposes underlying the statute of limitations." *Hosogai v. Kadota,* 145 Ariz. 227, 231, 700 P.2d 1327, 1331 (1985) (overruled on other grounds).   "The doctrine of equitable tolling permits a plaintiff to sue after the statutory time period has expired if he or she has been prevented from doing so due to inequitable circumstances."  54 Corpus Juris Secundum, Limitations of Actions, § 134; See Also 51 Am. Jur. 2d Limitation of Actions § 153 (Equitable tolling "permits a court to allow an action to proceed when justice requires it, even though the statutory time period as elapsed").

Here, it would fly in the face of justice to reward the McLeods with a free house

---

[17] See Stipulated Trial Exhibit 3– HomEq Comment Notes (Bates D2912).
[18] See Stipulated Trial Exhibit 44 – August 4, 2008 Complaint and Application for TRO filed in State Court Action.

1    for filing a meritless action (that was dismissed with prejudice) in state court, obtaining

2    an injunction that was not based on actual facts, and asserting that a 2008 Default

3    Judgment (later vacated) prevented foreclosure.

4        **d. Plaintiff exercised its unilateral right to revoke acceleration.**

5        In a recent case, the Arizona Court of Appeals confirmed that recording a notice of

6    trustee's sale "was an affirmative act of the debt's acceleration" that triggered the six year

7    statute of limitations. *Andra R Miller Designs, LLC v. US Bank, NA,* 244 Ariz. 265, 270,

8    418 P.3d 1038, 1043 (App. 2018).  However, the Court of Appeals also confirmed that

9    just as a creditor has the unilateral right to acceleration, a creditor also has the unilateral

10   right to "revoke" acceleration.  *Id.*  The Arizona Court of Appeals held that "a unilateral

11   revocation of the debt's acceleration requires an affirmative act by the creditor that

12   communicates to the debtor that the creditor has revoked the debt's acceleration."  *Id.*

13   The *Andra Miller* court found that sending a cancelation of trustee's sale – along with a

14   statement revoking the acceleration – provided enough notice to the debtor that the

15   acceleration had been canceled.  *Id.*

16       Here, just as in *Andra Miller,* there was a cancelation of trustee's sale.  While the

17   subject cancelation notice did not contain the exact same language in the *Andra Miller*

18   case, there were plenty of facts that would have provided notice to the McLeods that

19   acceleration had been revoked.  First, there was a second notice of trustee's sale recorded

20   in September 2008.  Obviously, a loan cannot be accelerated twice, thus the second

21   notice of trustee's sale provided notice that acceleration had been revoked prior to the

22   recording of the second Notice of Trustee's Sale.  Second, the McLeods' statements and

23   ongoing arguments that there was no valid lien supports that in their minds the loan was

24   no longer accelerated.  Third, the fact that there were two separate cancelation notices

25   and representations made in court ensuring no further action would be taken until the

26   litigation resolved proved that the McLeods had notice the loan was no longer accelerated

27   – and would be accelerated at a later date once the litigation had resolved in the state

28   court.  In fact, this is what happened – once the trial court made a finding that "this matter

1 | is resolved," the loan was accelerated again and this judicial foreclosure was filed.

2 | **IV.   LACHES**

3 | In Arizona, Laches is an equitable defense. *Sanders v. Sanders,* 52 Ariz. 156, 79

4 | P.2d 523 (1938).  Laches is a defense when lack of diligence on the part of the plaintiff

5 | results in injury or prejudice to the defendant but mere delay itself does not constitute

6 | laches. *Ivancovich v. Meier,* 122 Ariz. 346, 595 P.2d 24 (1979); *Mobile Discount Corp.*

7 | *v. Schumacher,* 139 Ariz. 15, 676 P.2d 649 (App. 1983).  Equity **does not favor** laches.

8 | *Beltran v. Razo,* 163 Ariz. 505, 788 P.2d 1256 (App. 1990).

9 | Here, the doctrine of laches does not apply because Plaintiff has been trying to

10 | foreclose since 2008 but the McLeods have prevented it through their dilatory tactics,

11 | including a meritless state court lawsuit, meritless injunction, meritless default judgment

12 | and other delay tactics.  The McLeods were clearly not prejudiced by the delay – quite

13 | the opposite.  They benefited greatly because they have been living in the subject

14 | property for more than ten years without having to make any mortgage payments and

15 | without having to make any property tax payments.

16 | **V.   CONCLUSION**

17 | For these reasons, the McLeods' statute of limitations and laches affirmative

18 | defenses fail.

20 | Dated: June 21, 2019          **HOUSER & ALLISON, APC**

22 | */s/ Robert W. Norman, Jr.*
23 | Robert W. Norman, Jr.
    | Attorneys for Plaintiff
24 | Deutsche Bank National Trust Company, As
25 | Trustee for Securitized Asset Backed
    | Receivables LLC Trust 2007-NC2, Mortgage-
26 | Pass Through Certificates, Series 2007-NC2

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 21, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Beth Findsen, Esq.
Price Law Group
8245 North 85th Way
Scottsdale, AZ 85258
beth@pricelawgroup.com
Attorney for Defendants Kenneth and Carol McLeod

s/ Paige Kleinwolterink
Paige Kleinwolterink