Robert W. Norman (SBN 025328)
HOUSER & ALLISON, APC
2929 N. Central Avenue, Suite 1560
Phoenix, AZ 85012
bnorman@houser-law.com
Ph: (480) 428-8370

Attorney for Plaintiff Deutsche Bank National Trust Company, as Trustee for Securitized Asset Backed Receivables LLC Trust 2007-NC2, Mortgage-Pass Through Certificates, Series 2007-NC2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Deutsche Bank National Trust Company, as Trustee for Securitized Asset Backed Receivables LLC Trust 2007-NC2, Mortgage-Pass Through Certificates, Series 2007-NC2,<br><br>Plaintiff,<br><br>vs.<br><br>Kenneth McLeod and Carol Ann McLeod, Husband and Wife; Circle G At Riggs Homestead Ranch Homeowners Association; Maricopa County Sheriff's Office; Kristin Ann McLeod aka Kristin Ann Mason; State of Arizona, ex rel., Arizona Department of Revenue; Unknown Heirs and Devisees of Kenneth McLeod and Carol Ann McLeod.<br><br>Defendants. | Case No. 2:14-cv-01720-NVW<br><br>HON: Neil V. Wake<br><br>**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

In anticipation of the trial that is currently scheduled for June 25, 2019 in this matter, Plaintiff hereby submits the following proposed findings of fact and conclusions of law:

1

## I. FINDINGS OF FACT

### a. Loan Origination and Default

1. This is a judicial foreclosure concerning real property located in Maricopa County, Arizona at 2538 East Virgo Place, Chandler, Arizona 85249 ("Property"). (Stipulated Fact, ¶ 1)

2. On or about October 13, 2006, Defendants Kenneth McLeod and Carol McLeod ("McLeods") executed a Note in the original principal sum of $771,000.00 ("Note"). (Stipulated Fact, ¶ 2)

3. As security for the amounts owing under the Note, the McLeods executed a Deed of Trust that was recorded on October 20, 2006 with the Maricopa County Recorder's Office ("Deed of Trust"). (Stipulated Fact, ¶ 2)

4. The original Lender was New Century Mortgage Corporation. (Stipulated Fact, ¶ 3)

5. Pursuant to the Pooling and Servicing Agreement dated February 1, 2007, the McLeods' loan was one of many loans pooled, securitized and transferred to Plaintiff. (Stipulated Fact, ¶ 4)

6. As set forth in the Note, the McLeods agreed to make monthly payments starting on December 1, 2006 until the maturity date of November 1, 2036. (Stipulated Fact, ¶ 5)

7. A letter dated October 13, 2006 informed the McLeods that the first monthly payment was due December 1, 2006 in the amount of $6,149.06, which consisted of: $5,563.56 (principal & interest), $397.98 ("tax reserves") and $187.52 ("insurance reserves"). (Stipulated Fact, ¶ 6)

8. Effective January 30, 2007, New Century Mortgage Corp. transferred the servicing of the subject loan to HomEq Servicing ("HomEq"). (Stipulated Fact, ¶ 7)

9. Correspondence dated January 26, 2007 informed the McLeods of the servicing transfer to HomEq and that the McLeods should make monthly payments to HomEq after January 30, 2007.  (Stipulated Fact, ¶ 8)

10. After servicing transferred to HomEq, the McLeods tendered the following payments to HomEq:  (Stipulated Fact ¶ 9)

| Date Sent (per McLeods' records) | Date Received (per Plaintiff's Records) | Payment Amount | HomEq Action |
|---|---|---|---|
| 02/9/2007 | 02/13/2007 | $6,149.06 | Accepted |
| 03/20/2007 | 03/20/2007 | $6,149.06 | Accepted |
| 04/09/2007 | 04/13/2007 | $6,149.06 | Accepted |
| 06/06/2007 | 06/06/2007 | $6,427.26 | Accepted |
| 07/11/2007 | 07/11/2007 | $6,427.26 | Accepted |
| 08/20/2007 | 08/20/2007 | $6,427.26 | Accepted |
| 09/04/2007 | 09/05/2007 | $6,420.60 | Accepted |
| 09/14/2007 | 09/17/2007 | $6,172.42 | Accepted |
| 12/12/2007 | 12/11/2007 | $19,003.60 | Accepted |
| 03/01/2008 | 03/03/2008 | $12,750.12 | Accepted |
| 05/14/2008 | 05/15/2008 | $13,047.98 (check #2173) | Returned |
| 05/31/2008 | 06/02/2008 | $22,405.90 (wire transfer) | Returned |

11. HomEq mailed a letter dated August 15, 2007 notifying the McLeods that they were in default ("August 15, 2007 Default Letter").  (Stipulated Fact ¶ 10)

12. The August 15, 2007 Default Letter indicated that the subject loan was due for the July 1, 2007 payment.  (Stipulated Fact ¶ 11)

3

13. The August 15, 2007 Default Letter stated the amount to cure the default was $12,553.84. (Stipulated Fact ¶ 12)

14. After HomEq sent the August 15, 2007 Default Letter, the McLeods made payments in the following amounts: $6,427.26 (August 20, 2007), $6,420.60 (September 5, 2007) and $6,172.42 (September 17, 2007). (Stipulated Fact ¶ 13)

15. By making two payments in September 2017 the McLeods brought the subject loan current through October 1, 2007. (Stipulated Fact ¶ 13)

16. The McLeods failed to make the October 2007 payment. (Stipulated Fact ¶ 9)

17. HomEq mailed a letter dated November 15, 2007 notifying the McLeods that they were in default ("November 15, 2007 Default Letter"). (Stipulated Fact ¶ 14)

18. The November 15, 2007 Default Letter stated the subject loan was due for the October 1, 2007 payment. (Stipulated Fact ¶ 15)

19. The November 15, 2007 Default Letter stated the amount to cure the default was $12,576.34. (Stipulated Fact ¶ 16)

20. By making a payment of $19,003.60 on December 11, 2007 the McLeods brought the subject loan current through January 1, 2008. (Stipulated Fact ¶ 17)

21. The McLeods failed to make the January 2008 payment. (Stipulated Fact ¶ 9)

22. HomEq mailed a letter dated February 4, 2008 notifying the McLeods that they were in default ("February 4, 2008 Default Letter"). (Stipulated Fact ¶ 18)

23. The February 4, 2008 Default Letter stated the subject loan was due for the January 1, 2008 payment. (Stipulated Fact ¶ 19)

24. The February 4, 2008 Default Letter stated the amount to cure the default was $12,734.28. (Stipulated Fact ¶ 20)

25. The McLeods tendered and HomEq accepted a $12,750.12 payment on March 3, 2008 which brought the subject loan current through March 1, 2008. (Stipulated Fact ¶ 21)

26. HomEq mailed a letter dated April 2, 2008 notifying the McLeods that they were in default ("April 2, 2008 Default Letter"). (Stipulated Fact ¶ 22)

27. The April 2, 2008 Default Letter stated the subject loan was due for the March 1, 2008 payment. (Stipulated Fact ¶ 23)

28. The April 2, 2008 Default Letter stated the amount to cure the default was $12,762.46. (Stipulated Fact ¶ 24)

29. The April 2, 2008 Default Letter stated the deadline to bring the subject loan current was May 7, 2008, however, the April 2, 2008 Default Letter specifically warned the McLeods that: "Because interest accruals, late charges and other expenses may be additionally incurred, the amount required to bring the Account current on the day you actually deliver your payment to HomEq may be greater than the amount provided. Accordingly, you should contact HomEq … to obtain the exact amount needed to bring the Account current prior to remitting payment." (Stipulated Trial Exhibit 16)

30. The McLeods never called HomEq to determine the exact amount needed to cure the default as set forth in the April 2, 2008 Default Letter. (Stipulated Trial Exhibit 21, Bates D0318)

31. On May 15, 2008, HomEq received Check No. 2173 dated May 14, 2008 in the amount of $13,047.98. (Stipulated Fact ¶ 27)

32. According to a letter from HomEq dated May 21, 2008 HomEq returned the $13,047.98 payment "due to these funds not being sufficient to reinstate the foreclosure status on the loan." (Stipulated Fact ¶ 28)

33. The $13,047.98 was insufficient to cure the default because on May 15, 2008 the subject loan was due for the March 1, 2008 monthly payment and the total amount to cure the default on May 15, 2008 was $22,127.72. This comprised the March/April/May principal and interest payments ($16,690.68), escrow payments ($1,618.47), late charges ($834.54), property inspection fee ($8.50), breach letter ($7.34), and foreclosure trustee fees ($2,968.19). (Stipulated Trial Exhibit 66)

34. HomEq received a wire transfer from the McLeods on June 2, 2008 in the amount of $22,405.90. (Stipulated Fact ¶ 33)

35. The $22,405.90 was insufficient to cure the default and bring the subject loan current because the total amount to reinstate on June 2, 2008 was $28,508.95, which comprised the March/April/May/June payments ($25,524.92), late fees ($1,112.72), property inspection ($8.50), breach letter ($7.34) and foreclosure trustee fees ($2,968.19).  (Stipulated Trial Exhibit 67)
36. HomEq mailed a letter dated June 11, 2008 informing the McLeods that the $22,405.90 was returned because "the account is in foreclosure and the check amount is not sufficient to reinstate the loan."  (Stipulated Fact ¶ 35)
37. No further payments were made or accepted after HomEq returned the $22,405.90 reinstatement attempt that was received by wire on June 2, 2008.  (Stipulated Fact ¶ 36)

**b. Non-Judicial Foreclosure and State Court Action**

38. On May 9, 2008 HomEq sent a letter stating in part: "The purpose of this letter is to advise you that the above-referenced account has been referred to HomEq Servicing's (HomEq) Foreclosure Department as a result of the account's delinquent status and is now under review for foreclosure."  (Stipulated Fact ¶ 25)
39. Plaintiff retained Tiffany & Bosco to substitute as the trustee under the Deed of Trust and initiate non-judicial foreclosure proceedings.  (Stipulated Trial Exhibit 56)
40. Tiffany & Bosco charged Plaintiff $2,968.19 for their services as trustee.  (Stipulated Trial Exhibits 66 and 67)
41. On May 29, 2008 Tiffany & Bosco recorded a Notice of Trustee's Sale setting a trustee's sale of the Property for August 28, 2008.  (Stipulated Fact ¶ 30)
42. On July 21, 2008 the McLeods filed an action in state court designated Case No. CV2008-092175 ("State Court Action").  (Stipulated Fact ¶ 37)
43. A minute entry filed in the State Court Action on August 12, 2008 states in part: "The parties agree in open court that the Deed of Trust sale scheduled for August

2, 2008 will be postponed indefinitely until this matter can be resolved." (Stipulated Fact ¶ 38)

44. Tiffany & Bosco recorded a "Cancelation of Trustee's Sale" on August 29, 2008, canceling the Notice of Trustee's Sale recorded on May 29, 2008. (Stipulated Fact ¶ 39)

45. On September 8, 2008 a second Notice of Trustee's Sale was recorded by the substituted trustee Old Republic National Title Insurance Company, setting a trustee's sale of the Property for December 8, 2008. (Stipulated Fact ¶ 40)

46. On September 22, 2008 the McLeods filed a "Motion to Enforce Prior Order of the Court" and supporting "Memorandum in Support of Motion to Enforce Prior Order of the Court." (Stipulated Fact ¶ 41)

47. A "Cancelation of Notice of Sale" was recorded on October 28, 2008, canceling the Notice of Trustee's Sale recorded on September 8, 2008. (Stipulated Fact ¶ 42)

48. A minute entry filed in the State Court Action on October 30, 2008 notes that "Discussion is held regarding the Cancelation of Notice of Sale" and "Counsel for Defendants … confirms that the cancelation notice is valid." (Stipulated Fact ¶ 43)

49. On November 24, 2008 the McLeods obtained a Judgment By Default in the State Court Action against Securitized Asset Backed Receivables LLC Trust 2007-NC2 ("2008 Default Judgment") that the McLeods later renewed on September 20, 2013. (Stipulated Fact ¶ 44)

50. A minute entry filed on March 14, 2014 in the State Court Action states in part that "…this matter is resolved and that no further proceedings are necessary or appropriate." (Stipulated Fact ¶ 46)

51. A minute entry filed on February 5, 2018 in the State Court Action vacates the 2008 Default Judgment. (Stipulated Fact ¶ 47)

52. A Final Rule 54(C) Judgment was filed in the State Court Action on June 7, 2018. (Stipulated Fact ¶ 48)

**c. Amounts Owing and Damages**

53. The amounts owing good through July 11, 2019 are: (Uncontested Fact But Not Admitted ¶ 1, Stipulated Trial Exhibit 65)

| | |
|---|---|
| Unpaid Principal Balance | $762,283.67 |
| Accrued Interest | $701,417.26 |
| Escrow Advances | $78,578.42 |
| Late Charges | $24,433.85 |
| TOTAL | $1,566,713.20 |

**II.   CONCLUSIONS OF LAW**

1. The Note and Deed of Trust are valid and binding contracts. (Stipulated Issue of Law, ¶ 1)
2. The Note and Deed and Trust are enforceable against the McLeods. (Stipulated Issue of Law, ¶ 2)
3. Plaintiff is the "person entitled to enforce" the Note and Deed of Trust as set forth in A.R.S. § 47-3301. (Stipulated Issue of Law, ¶ 3)
4. The McLeods breached the Note and Deed of Trust on four separate occasions by failing to make the full monthly payments when due. (See Trial Brief regarding Breach of Contract [Doc. 155])
5. After the fourth breach, the McLeods failed to cure the breach and bring the subject loan current, despite adequate notice provided under ¶ 22 of the Deed of Trust. (See Trial Brief regarding Breach of Contract [Doc. 155])
6. The McLeods attempted to cure the breach by making a payment on May 15, 2008 in the amount of $13,047.98, but Plaintiff had the right to reject the May 15, 2008

payment because the amount to cure the breach at that time was $22,127.72. Therefore, the May 15, 2008 payment did not cure the breach and does not prevent foreclosure. (See Trial Brief regarding Breach of Contract [Doc. 155])

7. The McLeods attempted to cure the breach by making a payment by wire transfer on May 30, 2008, but Plaintiff did not receive the May 30, 2008 wire transfer because the McLeods put the routing number where the account number should have been and therefore this payment did not cure the breach and does not prevent foreclosure. (See Stipulated Trial Exhibit 25; Trial Brief regarding Breach of Contract [Doc. 155])

8. The McLeods attempted to cure the breach by making a payment by wire transfer on June 2, 2008 in the amount of $22,405.90, but Plaintiff had the right to reject the June 2, 2008 payment because the amount to cure the default at that time was $28,508.95 and the total amount tendered was $22,405.90. Therefore, the June 2, 2008 payment did not cure the breach and does not prevent foreclosure. (See Trial Brief regarding Breach of Contract [Doc. 155])

9. Under the Deed of Trust, after the McLeods defaulted and failed to cure the default, Plaintiff had the right to accelerate all amounts owing and demand immediate payment in full, including but not limited to all expenses incurred in pursuing its remedies under the Deed of Trust, including attorneys' fees, costs of title evidence, late fees, escrow advances, property inspection and valuation fees. (See Trial Brief regarding Breach of Contract [Doc. 155])

10. The entire amount owing under the Note is secured by the Deed of Trust and Plaintiff is entitled to a judgment of foreclosure, permitting the sale of the Property to satisfy all amounts owing. (See Trial Brief regarding Breach of Contract [Doc. 155])

11. The McLeods' statute of limitations affirmative defense lacks merit for any of the following reasons (See Trial Brief regarding Statute of Limitations [Doc. 156]):

    (1) The state court injunction preventing foreclosure that was in place from at

least October 29, 2008 to March 14, 2014 tolled the statute of limitations for **1,962 days**. *Desruiseau v. Cameron,* 125 Ariz. 511, 513 (App. 1980).

(2) The statute of limitation was tolled during the time period that the McLeods argued the 2008 Default Judgment barred foreclosure. This time period lasted **3,360 days** – from November 24, 2008, which was the date the state court filed the default judgment, until February 5, 2018, which was the date the default judgment was ultimately vacated. *Triyar Capital, LLC v. REM Investment Company,* 2017 WL 1406375 * 8 (Ariz. App. April 20, 2017) (statute of limitations tolled pending litigation concerning whether mortgage was "void").

(3) The statute of limitations was tolled pursuant to the doctrine of equitable tolling since the McLeods' own conduct prevented Plaintiff from exercising its right to foreclosure. *Hosogai v. Kadota,* 145 Ariz. 227, 231, 700 P.2d 1327, 1331 (1985) (overruled on other grounds).

(4) The applicable accrual date was not May 29, 2008 as the McLeods contend.

Dated: June 21, 2019               **HOUSER & ALLISON, APC**


                                   */s/ Robert W. Norman, Jr.*
                                   Robert W. Norman, Jr.
                                   Attorneys for Plaintiff
                                   Deutsche Bank National Trust Company, As Trustee for Securitized Asset Backed Receivables LLC Trust 2007-NC2, Mortgage-Pass Through Certificates, Series 2007-NC2

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Beth Findsen, Esq.
Price Law Group
8245 North 85th Way
Scottsdale, AZ 85258
beth@pricelawgroup.com
Attorney for Defendants Kenneth and Carol McLeod

s/ Paige Kleinwolterink
Paige Kleinwolterink

11